UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
JOHN LYNN
on behalf of himself and
all other similarly situated consumers

                        Plaintiff,

     -against-

TRANS UNION, LLC,
CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE. N.A. AND
CAPITAL ONE BANK (USA), N.A.

                       Defendants.

---------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1. Plaintiff John Lynn seeks redress for the illegal practices of Trans Union, LLC, Capital One Financial Corporation, Capital One. N.A. and Capital One Bank (USA), N.A. (collectively referred to as "Capital One"), in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA) and the New York Fair Credit Reporting Act, NY CLS Gen Bus § 380, et seq. (NY FCRA).

2. The FCRA and NY FCRA prohibit furnishers of credit information to falsely and inaccurately report consumers' credit information to credit reporting agencies.

### *Parties*

3. Plaintiff is a citizen of the State of New York who resides within this District.

4. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

5. Defendant Trans Union is a Credit Reporting Agency ("CRA") that engages in the

business of maintaining and reporting consumer credit information.

6. Upon information and belief, Defendant Trans Union's principal place of business is located in Chicago, Illinois.

7. Defendant, Capital One is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

8. Upon information and belief, Defendant Capital One's principal place of business is located in Mclean, Virginia.

### *Jurisdiction and Venue*

9. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. All conditions precedent to the bringing of this action have been performed.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to John Lynn*

12. Plaintiff is a consumer who is the victim of inaccurate reporting by Defendant Trans Union, LLC, and has suffered particularized and concrete harm.

13. Plaintiff John Lynn disputed erroneous tradelines associated with a Capital One account and a Chapter 7, U.S. Bankruptcy Court account that appeared on his credit report directly with Trans Union, LLC in or around November of 2019.

14. Thereafter, Trans Union, LLC notified the Plaintiff that it had initiated an investigation into the said disputes.

15. Trans Union's investigation did not resolve the disputes and Plaintiff subsequently filed a statement of dispute with Trans Union in or around December of 2019 regarding both the Capital One and Chapter 7 accounts.

16. Section 1681i(c) of the FCRA provides: "Whenever a statement of a dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

17. Plaintiff obtained his consumer credit report from Trans Union, LLC on or about at the end of 2019 and found that Trans Union, LLC had not included Plaintiff's statements of dispute in the credit report.

18. 15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

19. Section 1681i(a) outlines the reinvestigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

20. Section 1681i(b), in turn, permits the consumer to file a "statement of dispute" with the CRA in the event that the reinvestigation fails to resolve the dispute.

21. Finally, Section 1681i(c) requires any consumer report produced subsequent to the filing of the statement of dispute to clearly note the dispute "and provide either the consumer's statement or a clear and accurate codification or summary thereof."

22. Subsequent to Trans Union, LLC's receipt of the Plaintiff's statement of dispute, Trans Union, LLC issued consumer reports without in any way indicating to the users of the reports that certain information contained therein was disputed by Plaintiff and failed to include a copy of Plaintiff's statement of dispute.

23. Trans Union, LLC intentionally failed to include the statement of dispute with later copies of the Plaintiff's consumer reports.

24. Plaintiff's December, 2019 "Statement of Dispute" letter, sent in response to Trans Union reinvestigation results constitutes a "statement of dispute" under 15 U.S.C. § 1681i(b).

25. The "Statement of Dispute" letters were sent after Plaintiff's request for a reinvestigation yielded no change in the status of the account on Plaintiff's credit report. This is precisely the process that § 1681i requires.

26. Plaintiff clearly provided sufficient detail in his December, 2019 "Statement of Dispute" letters to put Defendants on notice as to the nature of the dispute.

27. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

28. Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified the Defendants of the said dispute.

29. Despite having the dispute from the Plaintiff regarding the said Chapter 7 Bankruptcy account, Trans Union, LLC has completely abdicated its obligations to update the Plaintiff's credit report as necessary.

30. Despite having furnished information from Capital One and the dispute from the Plaintiff, Trans Union has completely abdicated its obligations under federal and state law and has instead chosen to merely "parrot" whatever its customer, Capital One has chosen to say.[1]

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing *Gorman v. Experian*; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

31. Defendant, Capital One has promised through its subscriber agreement or contracts to accurately update accounts but Capital One has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit report.

32. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

33. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. Id.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of

these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that Citibank continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with Trans Union, LLC. Accordingly, he has stated a valid claim under the FCRA.)

34. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

35. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[2]

36. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

37. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

38. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so merely showing that the furnisher did not comply with one of its duties will not establish liability.

39. Defendant Trans Union, LLC's subsequent reinvestigation of the item failed to resolve the disputes so the Plaintiff filed a statement of dispute with Trans Union, LLC and Trans Union, LLC failed to include the statement of disputes with later copies of the Plaintiff's consumer report.[3]

---

[3] See Cushman v. TransUnion Corp., 115 F.3d 220, 225 (3rd Cir. 1997) (holding that "in order to fulfill its obligation under section 1681i(a) 'a credit reporting agency may be required, in certain [*16] circumstances, to verify the accuracy of its initial source of information.'" (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)); Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010) ("Trans Union's failure to properly reinvestigate *Dixon-Rollins's* dispute was not an isolated incident. Indeed, it has repeatedly failed to carry out its statutory duty despite the rejection of the same argument it now repeats and admonishments that its reinvestigations were deficient. In 1997, the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information. *Cushman*, 115 F.3d at 225. **Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation**, *see e.g., Krajewski*, 557 F. Supp. 2d at 616; *Crane*, 282 F. Supp. 2d at 320; *Lawrence*, 296 F. Supp. 2d at 589; *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083 (D. Or. 2007) (**Trans Union must do more than parrot

40. If Trans Union, LLC did perform a reasonable investigation of Plaintiff's Chapter 7 Bankruptcy account dispute, Plaintiff's Trans Union, LLC report would be updated to reflect the removal of the said Chapter 7 account.

41. If Capital One did perform a reasonable investigation of Plaintiff's dispute, Plaintiff's Capital One account would be updated to reflect no late payments.

42. Capital One has promised through its subscriber agreements or contracts to accurately update accounts but Capital One has nonetheless willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and NY FCRA, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

43. Inaccurate information was included in the Plaintiff's credit report.

---

**information received by original source**); *Lambert v. Beneficial Mortgage Corp*., No 05-5468, 2007 U.S. Dist. LEXIS 33119, 2007 WL 1309542, at *2 (W.D. Wash. May 4, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. *See, e.g., Mullins v. Equifax Info. Servs., LLC*, No. 05-888, 2007 U.S. Dist. LEXIS 62912, 2007 WL 2471080, at *7 n. 11 (E.D. Va. Aug. 27, 2007). Thus, **because Trans Union has been warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc., v. Public Serv. Mut. Ins. Co*., 399 F.3d 224, 232 (3d Cir. 2005) (recidivist behavior relates to defendant's conduct as to non-parties.") (emphasis added); see also Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) ("In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."). The court in *Cushman* noted that to only require the credit reporting agency to go to the furnisher of information would replicate the requirements of section 1681e(b), and such a reading would render the two sections largely duplicative of each other. Id. Receiving notification of a dispute from a customer shifts the responsibility of reinvestigation onto the credit reporting agency, and the statutory responsibility imposed on the credit report agency "**must consist of something more than merely parroting information received from other sources...**Given the standard articulated in *Cushman* and Experian's claimed sole reliance on the information it received from HSBC, a jury could conclude that Experian did not reinvestigate Plaintiff's dispute in accordance with the requirements of 15 U.S.C. § 1681.") (emphasis added); Carlisle v. Nat'l Commercial Services, Inc., 2016 WL 4544368, at *7 (N.D. Ga. July 22, 2016), adopted, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) (when consumer disputes and CRA conducts cursory investigation, reporting of same dispute information violates § 1681e(b)); Lazarre v. JP Morgan Chase Bank (Lazarre II), 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (violation of § 1681i(a) logically entails violation of § 1681e(b); CRA that conducts unreasonably cursory reinvestigations would not be following reasonable procedures to ensure maximum possible accuracy); Burke v. Experian Info. Serv., 2011 WL 1085874, at *7 (E.D. Va. Mar. 18, 2011) (CRA could be liable for § 1681e(b) violation for failing to conduct reasonable investigation); Campbell v. Experian Info. Solutions, Inc., 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009); Wilson v. CoreLogic Saferent, LLC, No. 14-CV-2477 (JPO), 2017 U.S. Dist. LEXIS 162928, at *8 (S.D.N.Y. Sep. 29, 2017) ("**Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases**.'" Id. (quoting *Gorman v. Experian Info. Solutions, Inc.*, No. 07 Civ. 1846, 2008 U.S. Dist. LEXIS 94083, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); see also Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (Because summary judgment is not appropriate unless the reasonableness of the CRA's procedures is "beyond question," reasonableness "is treated as a factual question even when the underlying facts are undisputed.") (emphasis added)

44. The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[4]

45. The Plaintiff suffered injury.

46. The consumer's injury was caused by the inclusion of the inaccurate entry.

47. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of its employment, and under the direct supervision and control of the Defendants herein.

48. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

49. Discovery of the violations brought forth herein began in the month of November, 2019 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

## CLASS ACTION ALLEGATIONS

50. When a consumer notifies a debt collector that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" the debt collector must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item

---

[4] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, the debt collector must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

51. If a consumer disputes an account that appears on his or her credit, the debt collector must investigate to determine whether the account pertains to that consumer and should be part of that consumer's credit history. As part of the investigation, the debt collector must notify the source of the disputed account about the consumer's dispute and provide the source with all the relevant information provided by the consumer. Alternatively, the debt collector or the credit reporting agency can delete the derogatory information.

52. Trans Union, LLC and Capital One have long been aware of their obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

53. The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like Defendant Trans Union, LLC, violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

54. Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v.

Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Dennis v. BEH-1, LLC, 520 F.3d 1067 (9th Cir. 2008); Steed v. Equifax Info. Serv's, LLC, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

55. Trans Union's failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

56. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Trans Union, LLC's failure to comply with 15 U.S.C. §§ 1681i(a)(1) and 1681i(a)(2).

57. This cause of action is brought on behalf of Plaintiff and the members of a class.

58. The class consists of all persons whom Defendants' records reflect resided in the State of New York, who notified Trans Union, LLC and / or Capital One of a dispute of account(s) appearing in their Trans Union, LLC credit files and to whom the Trans Union, LLC failed to include the statement of dispute with later copies of the Plaintiff's consumer report, during the period beginning two years prior to the filing of this action and through the time of judgment.

59. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to the Trans Union, LLC, Trans Union, LLC has represented that it receives approximately 10,000 disputes a day, amounting to

millions of disputes each year. Accordingly, Plaintiff estimates that each class has thousands of members.

60. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Trans Union, LLC violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

61. Plaintiff's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Trans Union, LLC, one which Trans Union, LLC did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiff received results of his disputes from Trans Union, LLC with standard form language. Plaintiff's claim is typical of the two-year class because he made his dispute within two years.

62. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue these claims.

63. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Trans Union, LLC's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Trans Union, as the amount of each class member's individual claim is small compared to the expense

and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Trans Union's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

64. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## AS AND FOR A FIRST CAUSE OF ACTION
*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

65. At all times mentioned in this Complaint, Trans Union, LLC was a "consumer reporting agency," as referred to in 15 U.S.C. § 1681a(e).

66. At all times mentioned in this Complaint, Capital One was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

67. At all times mentioned in this Complaint, Capital One was a federally registered trade mark representing the furnisher for a disputed account which is the subject of this action.

68. Capital One is reporting inaccurate credit information concerning the Plaintiff to one or more credit bureaus as defined by 15 U.S.C. § 1681a of the FCRA.

69. Prior to the commencement of this action, Plaintiff disputed certain information about a

Capital One account on Plaintiff's Trans Union, LLC consumer credit report.

70. Plaintiff also disputed certain information about a Chapter 7, U.S. Bankruptcy Court account on Plaintiff's Trans Union, LLC consumer credit report.

71. Trans Union subsequently notified the Plaintiff that it would investigate the said disputes.

72. Trans Union, LLC's investigation did not resolve the disputes and Plaintiff subsequently filed statements of dispute.

73. The disputed accounts appeared on Plaintiff's Trans Union consumer report and in his file maintained by Trans Union, yet did not include the said statements of dispute.

74. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

75. Trans Union, LLC's investigation process did not live up to the standards of Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

76. Defendants' investigation process did not live up to the standards of the Federal Trade Commission in the matter of U.S. v. Performance Capital Mgmt. (Bankr. C.D. Cal. Aug. 24, 2000).

77. Defendants violated the duty under 15 U.S.C. 1681i by verifying the above referenced account without obtaining any documentation in support of its contention that Defendants were legally responsible for the account.

## **LIABILITY AND DAMAGES**

78. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

79. At all times mentioned in this Complaint, various employees and/or agents of Defendant were acting as agents of Defendant and therefore Defendant were liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

80. At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants are liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendants and their agents or employees were engaged in a common business venture and were acting jointly and in concert.

81. Plaintiff believes and asserts that he is entitled to $1,000.00 in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

82. Plaintiff believes and asserts that Defendants' actions were willful and intentional.

83. Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

84. Plaintiff requests punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

85. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

86. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

87. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

## **AS AND FOR A SECOND CAUSE OF ACTION**

### *(New York Fair Credit Reporting Act)*

88. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

89. Defendants Trans Union, LLC and Capital One failed to delete information found to be inaccurate, reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

90. Defendants Trans Union and Capital One failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of their investigation, their decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

91. Defendants Trans Union, LLC and Capital One failed to clearly note in all subsequent consumer reports that the account in question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

92. As a result of the above violations of the N.Y. FCRA, Trans Union, LLC and Capital One are liable to Plaintiff for actual damages, punitive damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

      a) Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

      b) Punitive damages pursuant to 15 U.S.C. § 1681n;

      c) Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

      d) Attorney's fees pursuant to N.Y. Gen. Bus. Law § 380-m; and

e) Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
January 31, 2020

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein (AF-9508)

12/4/2019



John W. Lynn

## *STATEMENT OF DISPUTE*

There are late payments for a Capital One account # xxxxxx.

But the account was on auto-pay always and thus was never considered late. it was the Capital One who was in error and reported it as late.

.

I hereby dispute the two accounts based on the rights afforded to me under 15 U.S.C. 1681i(b) of the Fair Credit Reporting Act.

12/23/2019

John W. Lynn



### STATEMENT OF DISPUTE

There is a CH-7, US Bankruptcy Court account on my credit. This bankruptcy was supposed to be removed from my report on November 28, 2019. it is now passed the statute of limitations.

I hereby dispute the account based on the rights afforded to me under 15 U.S.C. 1681i(b) of the Fair Credit Reporting Act.